ERNST F. HARTWIG v. JAMES L. GORDON.

FILED SEPTEMBER 26, 1893.   No. 5160.

1. Trial: INSTRUCTIONS. A party has a right to have his case submitted to the jury upon the issues in his favor as presented by his pleadings and proof.

2. ———: ORAL INSTRUCTIONS: REVIEW. The statute requires all instructions to a jury and modifications thereof to be in writing, and where oral instructions or oral modifications thereof are given, to which exceptions for that cause are taken, it is ground of error.

ERROR from the district court of Gage county. Tried below before APPELGET, J.

*Rickards & Prout*, for plaintiff in error:

The instructions should be applicable to the evidence introduced on the trial. It is error to disregard this rule.
45

(*City of Lincoln v. Holmes,* 20 Neb., 47; *Stough v. Stefani,* 19 Id., 468; *Ballard v. State,* Id., 619; *Meredith v. Kennard,* 1 Id., 319; *Neihardt v. Kilmer,* 12 Id., 38; *Republican V. R. Co. v. Fink,* 18 Id., 92.) Instructions should be in writing. (Ch. 19, secs. 52, 56, Comp. Stats.; *Republican V. R. Co. v. Arnold,* 13 Neb., 488.)

*Griggs, Rinaker & Bibb,* contra.

MAXWELL, CH. J.

This is an action commenced by the plaintiff to recover from the defendant the sum of $98.60, balance due on a bill of merchandise sold to the defendant in error. Trial was had and judgment for plaintiff. Defendant appealed to the district court. The defendant answered the petition of the plaintiff, admitted the claim of the plaintiff, and for further answer set up a counter-claim against the plaintiff in the sum of $250, moneys which he claimed to be due him on account of failure of a warranty of title to certain saloon fixtures which he alleged in his answer he purchased from the plaintiff for the sum of $550. The plaintiff replied denying each and every allegation of new matter contained in the answer. A trial was had to a jury.

In addition to the testimony in behalf of the defendant, and sustaining his cause of action, the evidence tends to show the following facts: In 1884 one George Poffenbarger was indebted to H. R. W. Hartwig & Co., a wholesale liquor firm of St. Joseph, Missouri, in a large sum of money, $600 of which was secured by chattel mortgage upon saloon fixtures and buildings located in the town of Blue Springs. In 1889 Poffenbarger sold the saloon fixtures, with the consent of Hartwig & Co., to the firm of Sivey & Bloom, who paid $300 in cash and executed to Hartwig & Co. a promissory note for $300 due July 8, 1889, as collateral to the note and mortgage which they already held against Poffenbarger. On or about the 5th

day of July, 1889, Sivey & Bloom became indebted to the plaintiff herein in quite a large amount for merchandise, and becoming embarrassed it was agreed between Sivey & Bloom and the plaintiff that George Poffenbarger should be placed in the saloon to receive the moneys and apply the proceeds after the payment of current expenses to the liquidation of Hartwig's claim against Sivey & Bloom. Poffenbarger remained in this position until some time in May, 1890, when the defendant Gordon went to Blue Springs and negotiated for the purchase of the fixtures for the purpose of going into the saloon business in Blue Springs.    After some preliminary arrangement a sale was consummated between the parties by which the defendant Gordon was to pay $550 for the saloon fixtures, $300 of which was to be paid in taking up a note which Sivey & Bloom had given to Hartwig & Co., the remaining $250 to be paid upon the bills of the concern which had been contracted during the time that Sivey, or Sivey & Bloom, were running the business.    About the 21st day of October, 1889, Eli Sivey, who succeeded to the rights of Sivey & Bloom in said property, executed a mortgage to secure a note of $1,000 to one Walter Foster, and afterwards, on the 11th of November, 1889, Sivey executed another mortgage upon the same property to Walter Foster to secure the sum of $1,000.    Both these notes and mortgages were afterwards assigned by Foster to one William Little, who, in June, 1890, and after the sale to Gordon, attempted to foreclose the mortgages, and for that purpose commenced a replevin action in the district court of Gage county against Eli Sivey and the defendant Gordon, to recover possession of said property, which action was tried in the district court of Gage county and judgment rendered in favor of the plaintiff therein on the 18th day of December, 1890; that action is now pending on error in this court.

The theory on which this case was tried on the part of defendant in the court below was that Hartwig claimed to

be the absolute owner of the property, and, as such owner, sold the same to Gordon and warranted the title. The evidence fails to establish this theory. The evidence shows clearly that the only interest Hartwig had in this property was to the extent of his mortgage of $300, three hundred of the $600 due him from Poffenbarger having been paid at the time Sivey & Bloom purchased from Poffenbarger. Of the $250 which Gordon paid, and for which he claims reimbursement from the plaintiff, not one dollar was received by Hartwig except on a merchandise bill which Sivey owed, and interest on the Sivey & Bloom note which had accumulated prior to the purchase by Gordon. Every cent of this $250 was paid out for the benefit of Sivey on bills which he had contracted while running the saloon, except possibly $25 which went to pay a check which he had drawn. It is further shown by the evidence that Hartwig was in no manner responsible for any of these debts to the payment of which the $250 was applied. How then can it be claimed that the plaintiff is responsible for this money to Gordon and should pay the amount back to him? But it is contended on behalf of this defendant that Poffenbarger was the agent of the plaintiff, and that he received the $250. The interest of the plaintiff in the property extended no further than his lien by virtue of the mortgage of $300. This amount was assumed by Gordon, who, as he himself testifies, went to St. Joseph and had an interview with the plaintiff, and it was then agreed that Gordon should pay the $300 to plaintiff, and that he should have six months' further time in which to pay it. It seems he never complied with that part of his contract. This being true, Hartwig could have had no interest whatever in the $250 which was paid by Gordon and applied to the payment of the debts of Sivey, and that Poffenbarger, in receiving the money, if he did receive it, which is not entirely clear, could not have acted as the agent of Hartwig for that purpose. The extent and scope of Poffenbarger's

agency is shown by the affidavit and letter of Hartwig introduced in evidence by the defendant:

"State of Missouri, } ss.
County of Buchanan, }

"Personally appeared Ernst F. Hartwig, who being duly sworn by me, upon his oath says that on July 5, 1889, he appointed George W. Poffenbarger his agent to hold and keep in his possession the saloon fixtures and pool and billiard tables located in the Sivey & Bloom saloon at Blue Springs, Nebraska, until he could find a purchaser therefor; that about the fore part of May, 1890, said George W. Poffenbarger sold said fixtures and pool and billiard tables to J. L. Gordon, which sale he confirmed.

"Ernst F. Hartwig.

"Sworn and subscribed to before me this first day of December, 1890.                 Max Andriano,
    "[seal.]                          Notary Public."

"St. Joseph, Mo., Dec. 1, 1890.

"Mr. G. W. Poffenbarger, Blue Springs, Neb.—Dear Sir: Yours to hand and all contents duly noted. Enclosed I hand you my affidavit which I think will be satisfactory in covering disputed points in the Sivey & Bloom and J. L. Gordon business. As to sale made to J. L. Gordon about May 1, 1890, of billiard and pool tables and barroom fixtures, will state that you were empowered by us to make the transfer as our agent of above named fixtures then in your possession. J. L. Gordon accepting note of Sivey & Bloom, amount of same, $300, bearing interest at ten per cent; date of note April 8, 1889, payable 90 days after date. On this note J. L. Gordon paid interest to May 1, 1890, $32.50, and agreed that he would pay principal and interest amounting to $315 November 1, 1890, without fail. Of course Gordon's failure on complying with the agreement leaves him out, and the goods revert back to us. I hope you will succeed in getting everything in good shape so that there will not be any more disputes hereafter.          Yours respectfully,    E. F. Hartwig."

These two papers should be read and construed together. They show that Poffenbarger was to hold possession of the saloon fixtures, pool and billiard tables until a purchaser could be found. Therefore, it will be observed that Hartwig assumed no control over the saloon, or over any property, except such as was covered by his chattel mortgage. The letter also shows just what plaintiff understood at the time in relation to the sale to Gordon, *i. e.*, that all he, plaintiff, had to do with the transaction was to receive the $300 and interest which was due him, and which, as he says in the letter, Gordon agreed to pay "November 1 without fail." Nowhere in this letter or affidavit is any reference made to the $250 which Gordon claims he paid to Hartwig or his agent.

The court instructed the jury as follows:

"The court instructs the jury that where a vendor in possession of personal property either by himself or agent sells the same to a purchaser who buys in good faith, believing he is obtaining a clear title to the property, there is an implied warranty of title by the vendor; and if in such case there is an outstanding claim of title, evidenced by a duly filed chattel mortgage on the property sold, and the mortgagee takes possession of said property under a writ of replevin, thereby depriving the purchaser of the possession of said property, and upon the trial of the replevin suit the judgment for the possession of the property is for the said mortgagee, then and in that case the purchaser of said property would be entitled to recover, against the vendor of the same, damages by reason of the failure of the vendor's title."

This instruction as an absolute proposition of law is no doubt correct, but it is not applicable to the testimony in the case as it in effect assumes that the plaintiff had sold the property to the defendant.

The plaintiff asked the following instructions, which were refused:

Hartwig v. Gordon.

"1. The jury are instructed that if you believe from the evidence that the title transferred to Gordon as stated in defendant's answer failed by reason of chattel mortgage given on said property by one Sivey after the date of the sale described in defendant's answer, then you are instructed that such failure is no fault of the plaintiff, nor does such failure come within the breach described in defendant's answer; and if you so find the facts to be, you should find for the plaintiff.

"2. The jury are instructed that if you believe from the evidence that H. R. W. Hartwig & Co., prior to the time that the defendant Gordon purchased the goods in question, had a claim against one Sivey, and that the only part that Hartwig & Co. took or had in the sale in question was for the better securing an indebtedness due them, and that at said time the real title to such property was in said Sivey, then you are instructed that the failure of said title at any subsequent time is not chargeable to this plaintiff, and you should find for the plaintiff."

These instructions should have been given. This was the plaintiff's theory of the case as presented by his pleadings and proof, and he had a right to have the case as presented by him submitted to the jury. The court therefore erred in refusing the instructions. There is some complaint that certain oral instructions were given to the jury, to which exceptions were taken on that ground. Our statutes provide that all instructions and modifications thereof shall be in writing, and it is ground of error if they are given orally. An exception, however, must be taken on that ground. This seems to have been done in this case. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.