RONALD KASPAR, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARY A. KASPAR, DECEASED, APPELLANT, v. COLIN B. SCHACK, M.D., APPELLEE.

237 N. W. 2d 414

Filed January 15, 1976. No. 40136.

Daniel G. Dolan and David S. Lathrop of Lathrop, Albracht & Dolan, for appellant.

Joseph P. Cashen of Kennedy, Holland, DeLacy & Svoboda, for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

In this medical malpractice case, the plaintiff appeals from a jury verdict and judgment for the defendant, primarily asserting error in the instructions given by the trial court on the burden of proof. We reverse the judgment of the District Court and remand the cause for a new trial.

The plaintiff's decedent, Mary Ann Kaspar, was a young married woman. In April of 1972, Mary Ann visited Dr. Schack who diagnosed her pregnant. Mary Ann continued to visit Dr. Schack periodically. Everything appeared normal during these visits. However, Dr. Schack expressed concern over Mary Ann's weight gain. On April 18, she had weighed 152 pounds, and on August 19 she was up to 171 pounds. Dr. Schack warned

her about the possibility of developing toxemia, also known as eclampsia. Dr. Schack scolded her about her weight gain and warned of its potential consequences.

Mary Ann had an appointment scheduled for September 16, 1972, with Dr. Schack, but did not come in. She called Dr. Schack's office and told his nurse that she had overslept. She also reported some swelling of her ankles. That evening Ron Kaspar returned home from work. Mary Ann's condition had drastically changed from the time he had left in the morning. She appeared swollen all over, was unable to speak clearly, and stumbled and nearly fell at one point. Ron called Dr. Schack at his home between 7 and 7:30 that evening. The content of this phone conversation was in dispute at the trial. It was agreed, however, that Dr. Schack told Ron to have Mary Ann in his office Monday morning.

Mary Ann's condition did not appear to worsen Saturday night or Sunday. On Monday, Mrs. Echtenkamp, Mary Ann's mother, came to the Kaspar home to take Mary Ann to the doctor's office. About 10 to 15 minutes after Mrs. Echtenkamp's arrival Mary Ann went into continuous convulsions. Mrs. Echtenkamp called the rescue squad and Dr. Schack's office.

Dr. Schack was waiting for Mary Ann when she arrived at the hospital and there diagnosed her case as acute eclampsia. Dr. Schack testified that Mary Ann had gained 15 to 20 pounds between the last time he saw her in August and that Monday morning at the hospital. The baby was delivered the next morning and was dead. Mary Ann died on Friday.

The issues of damages arising from the three causes of action are loss of society and companionship, pain and suffering, and for burial expenses. The main factual issue presented to the jury was the plaintiff's allegation that the defendant was negligent in failing to recognize and treat the symptoms reported to him on September 16, 1972, at approximately 7 p.m., because

they indicated the development of eclampsia and that he failed to make a personal examination and diagnosis of Mary Ann.

Boiled down, the defendant's allegations of contributory negligence were the failure of the decedent to follow instructions, failure of Mary Ann to advise of the changes in her condition, her failure to return to the defendant for an examination as directed within 3 weeks of her August 19 appointment, and the failure to keep her appointment with the defendant on September 16.

Plaintiff contends that the trial court erred in giving instruction No. 17 which reads: "You are instructed that when a patient consults a doctor and accepts the professional skill of a doctor, it is the duty of the patient to follow the advice of the doctor, and if he fails to follow his advice and something untoward happens to the patient which would not have happened, or which was not the result of the doctor's negligence, in such a case the doctor would not be liable. It is the duty of the plaintiff to prove by a greater weight of the evidence that the injury, if any, *was not caused by fault on his part*, but that the injury, if any, was proximately caused by negligence on the part of the defendant as negligence is defined in these instructions." (Emphasis supplied.)

This instruction placed upon the plaintiff, as administrator of the decedent's estate, the burden of proof to show that the decedent was not contributorily negligent in failing to follow the physician's advice. It is settled law in Nebraska that contributory negligence is an affirmative defense and that the burden is upon the defendant to establish such defense. Nisi v. Checker Cab Co., 171 Neb. 49, 105 N. W. 2d 523; Sherman v. Lawless, 298 F. 2d 899 (8th Cir., Neb., 1962). It is also settled law that where the defendant pleads that the plaintiff is guilty of contributory negligence, as here, the defendant has the burden to prove that defense, and that this burden does not shift during the trial. Colton v. Benes,

176 Neb. 483, 126 N. W. 2d 652; Mills v. Bauer, 180 Neb. 411, 143 N. W. 2d 270.

The defendant argues that instruction No. 6 correctly placed the burden of proof on the defendant to show that the decedent was contributorily negligent in failing to follow the physician's instructions and on the other issues presented as to contributory negligence. It is argued that this undenied conflict between instructions Nos. 6 and 17 did not constitute prejudicial error, when examined in the light of the familiar rule that all instructions should be examined together to determine whether they misled the jury and resulted in prejudice to a party.

Analyzing all the instructions together, the defendant persuasively and forcefully argues that, although instruction No. 17 was in error, the jury could not have been misled and that, therefore, there was no prejudicial error. We point out, however, that the instructions under attack here, concerning the burden of proof, are at the core of and central to the proper disposition and consideration by the jury. It is an issue upon which there should be no doubt in the instructions to the jury. With relation to the instructions on burden of proof this court has held categorically that it is error to give the jury instructions which contain inconsistent and conflicting paragraphs *relating to the burden of proof.* Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21. In the Umberger case, directly applicable to the present situation, this court stated as follows: "The rules applicable to such a situation will be found in Omaha Street Ry. Co. v. Boesen, 68 Neb. 437, 94 N. W. 619, wherein it was held: 'The giving of an instruction which places the burden of proof to establish some of the facts put in issue by the pleadings on the wrong party, is reversible error.

" 'It is error to give the jury instructions which contain inconsistent and conflicting paragraphs relating to the burden of proof. Farmers' Bank v. Harshman, 33

Neb. 445, approved and followed.' See, also, Mercer v. Omaha & C. B. St. Ry. Co., 108 Neb. 532, 188 N. W. 296, and Myers v. Willmeroth, 150 Neb. 416, 34 N. W. 2d 756."

This holding by our court has been consistently followed and is supported by the following authorities: Robison v. Union Transfer Co., 141 Neb. 574, 4 N. W. 2d 558; Bramhall v. Adcock, 162 Neb. 198, 75 N. W. 2d 696; Darnell v. Panhandle Coop Assn., 175 Neb. 40, 120 N. W. 2d 278; Bartels v. Retail Credit Co., 185 Neb. 304, 175 N. W. 2d 292. It is therefore clear that not only were the conflicting instructions on the burden of proof erroneous, but that they come clearly within the general rule that an instruction which misstates the law upon a vital issue is not cured by another which states the law correctly. Robison v. Union Transfer Co., *supra*. The conflict between instructions Nos. 6 and 17 as to the burden of proof was prejudicial error which requires a reversal and a remand for a new trial.

Plaintiff next alleges that instructions Nos. 7, 12, 14, and 16 are repetitious and taken together give undue emphasis to the defendant's side of the case. In Gran v. Houston, 45 Neb. 813, 64 N. W. 245, the court wrote: "Where, in order to fairly and intelligibly present all the issues in a case to the jury by the instructions, it becomes necessary to repeat a proposition, its repetition, in proper connection with other facts or principles involved, is not erroneous." In Denise v. City of Omaha, 49 Neb. 750, 69 N. W. 119, the court stated: "It is not ground for reversal of a case that the trial court *repeated* a proposition of law in the instructions each time *in proper connection with facts or other principles* involved, or where it does not appear that the effect was to perplex or mislead the jury." (Emphasis supplied.) See, also, City National Bank v. Thomas, 46 Neb. 861, 65 N. W. 895; Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451. While instructions Nos. 7, 12, 14, and 16 were somewhat repetitious, we do not believe they were so unduly repetitious

as to confuse or mislead the jury, or that this was prejudicial to the plaintiff. Each instruction correctly stated the law.

Plaintiff's final alleged error is the failure of the trial court to give his requested instructions Nos. 1 and 2. These instructions deal with the duty of the physician to adequately inform himself as to the condition of his patient. The refusal to give proper instructions requested by the plaintiff which are not covered by the instructions given is error. Hansen v. Lawrence, 149 Neb. 26, 30 N. W. 2d 63. The instructions previously given relative to the duty of a physician and the application of his skill and learning adequately covered what the plaintiff sought to cover by his requested instructions, and thus there was no error in refusing them.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.